# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAR 28 PM 1: 53

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JIMMY LEE MCBRIDE,           )
                             )
        Petitioner,          )
                             )
    v.                       )  CV 312-058
                             )  (Formerly CR 310-012)
UNITED STATES OF AMERICA,    )
                             )
        Respondent.          )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate confined to federal custody in FCI Marianna, in Marianna, Florida, commenced the above-captioned case by filing a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is currently before the Court on that motion as well as Petitioner's motion to amend, in which he seeks to add several new claims to his original pleading. (Doc. no. 8.) The government opposes both. (Doc. nos. 5, 9.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to amend be **DENIED**, that his § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

On October 14, 2010, a federal grand jury indicted Petitioner and two co-defendants on one count of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and one count of using, carrying, and brandishing a firearm during a crime of violence, in violation of

18 U.S.C. § 924(c)(1)(A)(ii).[1] <u>United States v. McBride</u>, CR 310-012, doc. no. 1 (S.D. Ga. Oct. 14, 2010) (hereinafter "CR 310-012"). Pursuant to a written plea agreement, Petitioner pleaded guilty to Count One of the indictment.[2] <u>Id.</u>, doc. no. 35. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum, and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

<u>Id.</u> at 2-3.

The Honorable Dudley H. Bowen, Jr., United States District Judge, held a Rule 11 hearing on January 13, 2011. <u>Id.</u>, doc. no. 74 (transcript of Rule 11 hearing). During that hearing, Judge Bowen questioned Petitioner to determine whether he was competent to plead guilty, and concluded that he was. <u>Id.</u> at 4-6. Judge Bowen asked Petitioner whether he was satisfied with the help that he received from his appointed counsel, Rita Llop, to which Petitioner responded, "Yes, Your Honor." <u>Id.</u> at 6-7. Petitioner then testified, after Judge Bowen reviewed Count One of the indictment and explained what the Government would have

---

[1] The Amended Penalty Certification provided that the penalties for Count One were "not more than twenty[-five] (25) years imprisonment, not more than $250,000 fine; not more than five years of supervised release; and a $100 special assessment." CR 310-012, doc. no. 4. The Certification provided that the penalties for Count Two were "not less than seven (7) years (consecutive to any other sentence imposed), not more than $250,000 fine; not more than five years of supervised release; and a $100 special assessment." <u>Id.</u>

[2] In exchange for Petitioner's guilty plea, the government agreed to dismiss Count Two of the indictment, that it would not object to a recommendation that Petitioner receive a reduction for acceptance of responsibility, and that it would move for the third offense level point reduction based upon the timeliness of the plea, if applicable. CR 310-012, doc. no. 35.

to prove to obtain a conviction, that he understood the charge and had no questions. Id. at 7-12. Judge Bowen explained that the maximum penalty for the charge in Count One was 25 years of incarceration, along with a fine of not more than $250,000.00, a term of supervised release of not more than five years, and a $100 special assessment. Id. at 12-13. Petitioner affirmed that he understood. Id. at 13.

Judge Bowen next explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 13-15. Petitioner also averred, in response to questions asked by Judge Bowen, that no one had "made any threat or applied any force or pressure of any kind in order to get [him] to plead guilty." Id. at 15. Petitioner further averred, again in response to questions asked by Judge Bowen, that no one had "made any other promise or given [him] any other deal or hope or benefit in order to get [him] to plead guilty," and that no one had "given [him] any prediction or prophecy or guarantee about what sentence [he] would get in this case." Id. at 21.

Judge Bowen then summarized the terms of the plea agreement and explained to Petitioner that he had "agreed to waive any right to appeal," as well as "any right to challenge the fact of conviction by way of habeas corpus proceeding or any other proceeding." Id. at 19. Judge Bowen reiterated that "the only way [Petitioner] would get any right to appeal from any sentence imposed would be if for some reason [Judge Bowen] imposed a sentence that went above the guideline range or above the statutory range[.]" Id. at 20. Petitioner indicated at the hearing that he understood that he had agreed to this waiver as set forth in the plea agreement and summarized by Judge Bowen. Id. After hearing testimony as to the factual basis for the

plea, the truth of which Petitioner largely confirmed,[3] Judge Bowen accepted Petitioner's guilty plea. Id. at 22-40.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided for a base offense level of 20 and several enhancements: (1) a two-point enhancement based on involved property being taken from a financial institution; (2) a six-point enhancement for use of a firearm; (3) a four-point enhancement because a person was abducted to facilitate commission of the offense; and (4) a one-point enhancement for the offense resulting in a loss of between $10,000.00 and $50,000.00. PSI ¶¶ 29-36. Petitioner also received a three-point reduction in offense level for acceptance of responsibility. PSI ¶ 37. Petitioner's resulting total offense level was 30 and his criminal history category was II. PSI ¶¶ 40, 72. Petitioner filed objections to the PSI, including objecting to the six-point enhancement for use of a firearm and the four-point enhancement for abduction, as well as to the use of an uncounseled Florida conviction in his criminal history score. PSI, Addendum.

At the sentencing hearing on July 20, 2011, counsel withdrew Petitioner's objections concerning the sentencing enhancements, but maintained his objections to the use of the Florida conviction. CR 310-012, doc. no. 64, pp. 5-12 (sentencing hearing transcript). Petitioner, in response to a question from Judge Bowen, affirmed that he understood that counsel was withdrawing those objections and that he had no questions. Id. at 12. Thereafter,

---

[3]Petitioner initially took issue with some of the testimony of Marcus Kirkland, Special Agent at the Statesboro Resident Agency of the Federal Bureau of Investigation. See CR 310-012, doc. no. 74, pp. 37-39. Following his explanation of his disagreement, however, Petitioner nonetheless stated that he was guilty as charged in Count One of the indictment and wished to plead guilty. Id. at 39.

Judge Bowen stated that he would not consider the prior Florida conviction for a criminal history enhancement, resulting in a guideline range of 108 to 135 months imprisonment, 3 to 5 years supervised release, $15,000.00 to $150,000.00 in fines, $21,650.00 restitution, and a $100.00 special assessment. Id. at 12, 53, 56; PSI ¶¶ 42, 72. In a judgment entered on July 26, 2011, Judge Bowen sentenced Petitioner to a 135-month term of incarceration, five years of supervised release, $21,650.00 in restitution, and an assessment of $100.00. CR 310-012, doc. no. 55. Petitioner did not appeal.

On June 25, 2012, Petitioner filed his original § 2255 motion in this case, in which he contended that (1) his sentence was incorrectly enhanced six levels for use of a "firearm," as a BB-gun is not a "firearm,"[4] and (2) his sentence was incorrectly enhanced four levels for physically restraining victims in the commission of the offense. (See doc. no. 1.) In an Order dated June 27, 2012, the Court directed Respondent to respond to the original § 2255 motion. (Doc. no. 2.) Respondent filed a response, arguing that Petitioner's claims were (1) barred by the collateral attack waiver in his plea agreement, (2) procedurally defaulted, and, (3) not

---

[4]Specifically, Petitioner contends, relying on United States v. Koonce, 991 F.2d 693, 698 (11th Cir. 1993), that the BB-gun was a "dangerous weapon" rather than a "firearm" for purposes of U.S.S.G. §§ 2B3.1(b)(2)(B) and (E). According to the guidelines, "'Firearm' means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a 'BB' or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm." Id. § 1B1.1.

Of note, while Petitioner withdrew his objection concerning the BB-gun, one of his co-defendants, Noel Arnold, argued the issue at sentencing. Accordingly, Judge Bowen heard testimony from the bank tellers and Mr. Arnold, as well the arguments of counsel on the issue. See CR 310-012, doc. no. 64, pp. 16-53. After hearing this testimony and argument, Judge Bowen concluded that there were two firearms used during the robbery, and it was "virtually an inescapable conclusion that they were firearms. They were devices designed to expel a projectile through the use of an explosive or gunpowder. They were not BB guns." Id. at 54.

cognizable in a § 2255 action. (Doc. no. 3.) Petitioner filed a reply.[5] (Doc. no. 7.) On the same day as he filed his reply, Petitioner also filed a motion to amend, attempting to raise four claims of ineffective assistance of counsel that he asserts "relate[] directly to claims one and two of the original [§ 2255] motion." (Doc. no. 8, p. 2.) Respondent opposes Petitioner's motion to amend. (Doc. no. 9.) The Court resolves these matters as follows.

## II.    DISCUSSION

### A.    No Need For Evidentiary Hearing

Petitioner requests an evidentiary hearing in his reply to Respondent's response. (Doc. no. 7, p. 3.) With regard to that request, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see

---

[5]After Respondent filed its response, Petitioner filed a "Motion for Extension" in which he requested permission to amend his § 2255 motion to add two claims and an extension of time to reply to government's response. (See doc. no. 4.) Because Petitioner failed to specify which two claims he sought to add to his § 2255 motion, the Court denied his request to amend in an Order dated October 10, 2012. (Doc. no. 6.) In the same Order, however, the Court granted Petitioner an extension of time to reply to the government's response. (Id.)

also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

**B.      Claims in Original § 2255 Motion Are Barred by the Collateral Attack Waiver**

It is well-settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[6] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then the claims in Petitioner's original § 2255 motion are barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (per curiam) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

---

[6]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. In the written plea agreement signed by Petitioner, he "expressly waive[d] the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding." CR 310-012, doc. no. 35, pp. 2-3. Moreover, Judge Bowen thoroughly reviewed the terms of the plea agreement during the Rule 11 hearing, emphasizing that Petitioner had "agreed to waive any right to appeal," as well as "any right to challenge the fact of conviction by way of habeas corpus proceeding or any other proceeding," unless Judge Bowen "imposed a sentence that went above the guideline range or the statutory range[.]" Id., doc. no. 74, pp. 19-20. After Judge Bowen concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Bowen. Id. at 20.

While Petitioner would have the Court ignore his responses to Judge Bowen's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. Thus, the Court concludes that the collateral attack waiver is valid.

Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement in his motion to amend,[7] a claim which, if found

---

[7]Specifically, Petitioner alleges that counsel was ineffective for failing to inform him of the option to enter an "open" guilty plea which would have preserved his post-conviction rights, which rendered his guilty plea unknowing and involuntary. See infra Part II.C.4.

to have merit, would cast doubt on whether Petitioner validly waived his right to collaterally attack his sentence. However, as discussed infra, see Part II.C.4, the Court determines that this claim lacks merit, thus supporting the conclusion that Petitioner validly waived his right to a collateral post-conviction attack of his sentence.

In sum, the Court concludes that both of the claims set forth in Petitioner's original §2255 motion are barred from review. Accordingly, the Court finds that Petitioner is not entitled to relief on the grounds set forth in his original § 2255 motion.[8] The Court will now proceed to address Petitioner's motion to amend, in which he proposes four new claims.

### C.    Petitioner's Motion to Amend Should Be Denied

As noted above, following the filing of the government's response, Petitioner filed a motion to amend his § 2255 motion. (Doc. no. 8.) Petitioner seeks to add the following four claims of ineffective assistance of counsel "as it directly relates to Grounds One and Two [in the original § 2255 motion]:"

(1)    Counsel was ineffective for failing to argue "the facts at sentencing that would support Petitioner's position in Grounds One and Two;"

(2)    Counsel was ineffective for "failing to investigate the facts surrounding Petitioner's Indictment that would have given counsel sufficient information in which to argue Petitioner's position in Grounds One and Two;"

(3)    Counsel was ineffective "in the plea negotiation process" for failing to inform Petitioner of his right to an "'open' plea which would have preserved Petitioner's post-conviction rights" and for advising Petitioner that his choices were to accept the government's plea agreement or go to trial;

(4)    Counsel was ineffective "for failing to file a direct appeal on the issues

---

[8]Thus, the Court need not reach Respondent's contentions that these claims are procedurally defaulted or are not cognizable in a § 2255 motion.

raised in Grounds One and Two."

(Doc. no. 8, pp. 3-4.) Respondent contends that Petitioner's request to add additional claims

should be denied as the proposed claims cannot provide a basis for relief. (See doc. no. 9.)

Federal Rule of Civil Procedure 15(a)(1)[9] provides that:

> A party may amend its pleading once as a matter of course within: (A) 21 days
> after serving it, or (B) if the pleading is one to which a responsive pleading is
> required, 21 days after service of a responsive pleading or 21 days after service
> of a motion under Rule 12(b), (e), or (f), whichever is earlier.

If a party is not entitled to amend as a matter right under Rule 15(a)(1), then "a party may

amend its pleading only with the opposing party's written consent or the court's leave." Fed.

R. Civ. P. 15(a)(2). As a general rule, leave to amend under Rule 15(a) is given freely. Foman

v. Davis, 371 U.S. 178, 182 (1962). That said, leave to amend is not guaranteed, and the

decision of whether to grant a motion to amend is within the sound discretion of the trial court.

Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July

1981).[10] "In making this determination, a court should consider whether there has been undue

delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility

---

[9]The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions. See Mayle v. Felix, 545 U.S. 644, 654 (2005); Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001) (per curiam). Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

[10]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

of the amendment." Local 472, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Ind. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (quoting Foman, 371 U.S. at 182).

An amendment is futile when the pleading that it seeks to amend would still be subject to dismissal if the amendment were permitted; similarly, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007))). In accordance with this principle, where the proposed amendment would be barred by the applicable statute of limitations, a district court may properly deny leave to amend as futile. See Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993); see also United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) ("Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied.").

Notably, however, under Federal Rule of Civil Procedure 15(c), an amended claim will relate back to the date of the original pleading if it arises "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (*per curiam*) (citing Pruitt, 274 F.3d at 1318). Moreover, in the context of a habeas corpus action, the fact that claims arise out of the same "trial, conviction, or sentence" is not sufficient for relation back. Mayle, 545 U.S. at 664; Farris, 333 F.3d at 1215 ("[T]o relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the

11

same trial or sentencing proceeding." (citing <u>Davenport v. United States</u>, 217 F.3d 1341, 1344 (11th Cir. 2000))). Rather, it is imperative that the claims be "tied to a common core of operative facts." <u>Mayle</u>, 545 U.S. at 664; <u>see also</u> <u>Pruitt</u>, 274 F.3d at 1319 ("[T]he key factor is whether the amended claims arise from the same underlying facts as the original claims.").

Here, because Petitioner's motion to amend was filed more than 21 days after the government's response to his original § 2255 motion, he cannot amend as a matter of right under Rule 15(a)(1). Therefore, the Court will proceed to determine whether his four proposed amendments should be allowed under Rule 15(a)(2).

### 1.    Timeliness of Petitioner's Proposed Claims

Because Petitioner's proposed claims were brought in a motion submitted subsequent to the original § 2255 motion, the Court must first determine whether such claims are timely. 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for the claims in § 2255 motions. The limitations period begins to run on the latest of four possible dates:

1.    the date on which the judgment of conviction becomes final;

2.    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

As no direct appeal was filed in Petitioner's criminal case, his conviction and sentence became final fourteen days after judgment was entered, in August of 2011. See Fed. R. App. P. 4(b)(1). Petitioner does not suggest that any date other than that on which his conviction became final should be the operative date for purposes of the AEDPA. Thus, the proposed amended § 2255 motion, which was signed by Petitioner on October 24, 2012,[11] (see doc. no. 8, p. 2), was filed more than a year after his conviction became final, and the claims therein would be untimely under the applicable statute of limitations unless Petitioner can show otherwise.

As discussed above, one way in which Petitioner might bring these seemingly untimely claims is if they relate back to the date of original § 2255 motion under Rule 15(c). In both of the claims in his original § 2255 motion, Petitioner challenged the sentencing court's application of the sentencing guidelines, arguing that his sentence was improperly enhanced based on the brandishing or possessing of a firearm and the abduction of bank tellers during the bank robbery. (See doc. no. 1.) The claims in the original § 2255 motion thus hinge on the factual and legal questions of whether Petitioner indeed used a firearm and abducted a person to facilitate the offense for purposes of U.S.S.G. §§ 2B3.1(b)(2)(B) and (4)(A). With this in mind, the Court will proceed to consider whether Petitioner's four proposed amendments relate back and are thus timely, as well as whether amendment would otherwise be futile based on the principles discussed above.

---

[11]Under Houston v. Lack, 487 U.S. 266, 276 (1988), Petitioner's motion is deemed filed on the date of delivery to prison officials for mailing. See also Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam) (§ 2255 motion deemed filed on date the petitioner "signed, executed, and delivered his petition to prison authorities for mailing").

2.    **Petitioner's First and Second Proposed Claims Are Timely, but Barred by the Collateral Attack Waiver**

Petitioner's first and second proposed claims are that his trial counsel rendered ineffective assistance by failing to raise Petitioner's claims concerning misapplication of the guidelines at sentencing, and for failing to investigate the facts that would have allowed counsel to effectively challenge the alleged misapplication of the guidelines. These are essentially the same as the claims asserted in the original § 2255 motion, which likewise concerned the alleged misapplication of the sentencing guidelines, simply recast as ineffective assistance of counsel claims. Although the legal framework for these claims is therefore different, they share a factual basis with the claims in the original § 2255 motion. Thus, the Court finds Petitioner's first and second proposed claims relate back to the date of the original § 2255 motion, and would thus be timely. See Pruitt, 274 F.3d at 1319 ("[T]he key factor is whether the amended claims arise from the same underlying facts as the original claims.").

That having been said, it is nevertheless futile for Petitioner to bring his proposed first and second claims because, for the reasons discussed above with respect to the claims in his original § 2255 motion, they are barred by the collateral attack waiver in his plea agreement. See supra Part II.B. Moreover, the fact that these two proposed claims are premised on ineffective assistance of counsel does not alter this conclusion. "An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's

14

representation at sentencing were not exempted from the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

The same reasoning applies here. Like the claims in Williams, Petitioner's proposed ineffective assistance of counsel claims concern his counsel's performance at sentencing, and do not call into question the validity of Petitioner's guilty plea or collateral attack waiver.[12] Accordingly, these claims, if allowed, would be barred by the collateral attack waiver. Petitioner's motion to amend should thus be **DENIED** for futility with regard to his first and second proposed ineffective assistance of counsel claims. See Coventry First, LLC, 605 F.3d at 870.

### 3.    Petitioner's Third and Fourth Proposed Claims Are Untimely

Turning to Petitioner's third and fourth proposed claims, the Court begins by noting that the third is that counsel was ineffective during plea negotiations for allegedly failing to inform Petitioner of his right to enter an "open" plea, while the fourth is that counsel was ineffective for failing to file a direct appeal. Accordingly, unlike Petitioner's first and second proposed claims, which concerned counsel's performance at sentencing and thus sufficiently related back to the claims in his original § 2255 motion concerning misapplication of the sentencing guidelines, these claims obviously bear no relation to the claims in the original § 2255 motion. Rather, the third and fourth proposed claims are totally distinct in terms of their legal and factual bases from those in the original § 2255 motion, and it is not enough that they merely

---

[12]Indeed, Petitioner nowhere contends that his attorney's alleged ineffectiveness *at sentencing* rendered his plea involuntary. As Respondent observes, such an argument would be untenable given that Petitioner entered his guilty plea more than six months before he was sentenced.

15

arose out of the same conviction. See Mayle, 545 U.S. at 664. Indeed, Petitioner's third and

fourth proposed claims, which concern either conduct during plea negotiations or after judgment

was entered, are also too far removed in time from the claims in Petitioner's original § 2255

motion, which solely concerned occurrences at sentencing. See Mabry v. United States, 336

F. App'x 961, 963 (11th Cir. 2009) (*per curiam*) (district court did not abuse its discretion in

finding that proposed amendments alleging ineffective assistance of counsel for not seeking

sentencing cap in plea agreement did not relate back to ineffective assistance of counsel claims

in original motion which all "revolve[d] around counsel's performance during or after

sentencing and not during the plea negotiations."). Therefore, the Court finds that the third and

fourth proposed claims arise out of different conduct and occurrences than the claims in

Petitioner's original § 2255 motion; accordingly, these proposed claims cannot relate back to

the date of that motion.

Another manner in which the third and fourth proposed claims might not be time-barred,

however, is if they qualify for equitable tolling, which the Eleventh Circuit has held applicable

to the statute of limitations in § 2255 cases. Johnson v. United States, 340 F.3d 1219, 1226

(11th Cir. 2003), *aff'd,* 544 U.S. 295 (2005). Equitable tolling can be applied to prevent

application of the AEDPA's statutory deadline, if a petitioner can "show '(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'

and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v.

DiGuglielmo, 544 U.S. 408, 418 (2005)). Nevertheless, equitable tolling is typically applied

sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly

extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).

The petitioner bears the burden of proving his entitlement to equitable tolling, Jones v. United

States, 304 F.3d 1035, 1040 (11th Cir. 2002), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir. 2006) (citing Pace, 544 U.S. at 418-19).

Here, Petitioner does not make any argument for equitable tolling, and no basis for such tolling is apparent upon an examination of the motion to amend and the record. Accordingly, the Court concludes that there is no basis for equitably tolling the AEDPA's one-year statute of limitations.

Additionally, consideration of otherwise untimely claims for federal habeas relief may be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has resulted in the conviction of someone who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1985); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a petitioner seeking to invoke it must "show that it is more likely than not that no reasonable juror would have convicted him." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Id. (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)).

Here, Petitioner makes clear that he "does not attempt to argue that he is innocent of the crime." (Doc. no. 8, p. 11.) Moreover, Petitioner has not presented any new evidence to suggest that he did not commit the offense to which he pled guilty such that no reasonable juror would have convicted him. Therefore, the actual innocence exception does not save the third and fourth proposed claims from being time-barred under the AEDPA.

17

In sum, Petitioner's third and fourth proposed claims in his motion to amend would be time-barred.[13] Petitioner's motion to amend should therefore be **DENIED** for futility as to these claims. See Moore, 989 F.2d at 1131. Accordingly, Petitioner's entire motion to amend should be **DENIED** for futility. See Coventry First, LLC, 605 F.3d at 870.

### 4. Petitioner's Third Proposed Claim that Counsel Was Ineffective During Plea Negotiations Also Lacks Merit

Petitioner's third proposed claim is that counsel was ineffective for failing to inform Petitioner of his option to enter an "open" plea[14] which would have preserved his post-conviction rights, and instead advising Petitioner that his choices were to accept the government's proposed plea agreement or go to trial. (Doc. no. 8, p. 3.) While the Court has concluded supra that this proposed claim is untimely and thus need not be considered, see Part II.C.3, because it touches upon the validity of the collateral attack waiver, the Court will briefly address the merits of the claim.

As noted earlier, some claims of ineffective assistance can survive a valid collateral attack waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective

---

[13]The Court also concludes, as discussed in greater detail infra, that Petitioner's proposed third claim lacks merit. See Part II.C.4.

[14]An "open" plea of guilty is one made without the benefit of entering into a plea agreement with the government. See Drummond v. United States, 482 F. App'x 472, 472-73 (11th Cir. 2012) (per curiam); United States v. Booth, 432 F.3d 542, 543 n.1 (3d Cir. 2005).

assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As Petitioner's proposed third claim purports to challenge his counsel's performance as it relates to the validity of his plea or waiver (inasmuch as he alleges that counsel did not advise him of his option to enter into an "open" plea rather than the accept the government's plea agreement or go to trial), this claim would not be barred by the provision in the plea agreement waiving Petitioner's right to collaterally attack his conviction.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

19

defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, the Court finds that Petitioner's claim that counsel was ineffective for failing to apprise him of the option to enter an "open" plea lacks merit. Specifically, Petitioner has failed to show prejudice, or that the outcome of the proceeding would have been different if counsel had informed him of the option to enter an "open" guilty plea. Notably, as a result of entering

20

into the plea agreement with the waiver, the Government agreed to dismiss Count Two of the indictment, an offense which carried a mandatory *minimum* consecutive sentence of seven years, a maximum fine of $250,000.00, a maximum of five years of supervised release, and a $100.00 special assessment. See 18 U.S.C. § 924(c)(1)(A)(ii); CR 310-012, doc. nos. 4, 35. In other words, had Petitioner entered into an "open" plea without the benefit of the plea agreement, he would have been exposing himself to a considerably harsher sentence, including a longer term of incarceration. Petitioner accepted the plea agreement proposed by the government, however, and accordingly received the benefit of only being sentenced under Count One of the indictment, without the mandatory minimum penalty that Count Two would have carried. Petitioner nowhere even acknowledges this, and he thus falls well short of establishing a reasonable probability that, had counsel informed him of the option to enter into an "open" plea, the outcome of the proceeding would have been different. See Perez v. United States, No. 6:09-cv-474-Orl-28KRS, 2010 WL 1416988, at *3 (M.D. Fla. Apr. 8, 2010) (rejecting petitioner's claim that counsel was ineffective for failing to advise him he could enter a "straight guilty plea" and reserve his right to appeal and collaterally attack his sentence because he failed to show there was a reasonable probability he would not have entered into the agreement, as he voluntarily and knowingly choose to waive his post-conviction rights and received the benefits of that agreement, including a recommendation for a reduced sentence). Accordingly, even if it were timely, Petitioner's third proposed claim of ineffective assistance of counsel lacks merit for Petitioner's failure to establish prejudice. See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59.

The Court will also briefly address Petitioner's related contention that counsel's alleged ineffectiveness during plea negotiations rendered his guilty plea involuntary. (See doc. no. 8,

p. 9.) Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the

22

nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Bowen addressed each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Bowen conducted questioning to determine that Petitioner was competent to plead guilty. CR 310-012, doc. no 74, pp. 4-6. Judge Bowen then outlined the elements of the count to which Petitioner was pleading guilty and what the government would have to prove to obtain a conviction, and Petitioner affirmed that he understood the charge and had no questions. Id. at 7-12. Judge Bowen explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 13-15. Petitioner then testified that he had reviewed the plea agreement with his attorney before he signed it, and that he understood that he was agreeing that whatever facts were contained in the agreement were true. Id. at 19-20.

Judge Bowen outlined the maximum penalties that might be imposed in the event of conviction, and Petitioner affirmed that he understood. Id. at 12. Petitioner also averred, in response to questions asked by Judge Bowen, that no one had "made any threat or applied any force or pressure of any kind in order to get [him] to plead guilty." Id. at 15. He further swore that no one had "made any other promise or given [him] any other deal or hope or benefit in order to get [him] to plead guilty," and that no one had "given [him] any prediction or prophecy or guarantee about what sentence [he] would get in this case." Id. at 21.

In short, Judge Bowen's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and Petitioner fails to show otherwise by asserting that his attorney failed to inform him of the option to enter an "open" guilty plea. Stated simply, Petitioner's allegations of counsel's failings do not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea.[15] Furthermore, Petitioner nowhere contests his admission of guilt, nor does he even contend he would have entered an "open" plea had he been informed of the option. Petitioner obviously falls well short, then, of establishing a reasonable probability that he would not have entered into the plea agreement but for his counsel's alleged errors. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

Therefore, the amendment with respect to Petitioner's proposed third claim would be futile on this basis as well. In short, all of Petitioner's proposed claims are untimely, are barred by the collateral attack waiver in his plea agreement, or otherwise lack merit. Petitioner's motion to amend should therefore be **DENIED** for futility. See Coventry First, LLC, 605 F.3d

---

[15]Petitioner's reliance on United States v. Brown, 117 F.3d 471 (11th Cir. 1997) is thus misplaced. Brown concerned the failure of counsel (and the trial court) to properly inform the defendant about the elements of the offense to which he pleaded guilty, as the defendant was misinformed that the government need not prove that he was aware of the illegality of money structuring in order to obtain a conviction, when in fact proof of such knowledge was required. See id. at 476-77. Accordingly, the Eleventh Circuit concluded that the guilty plea could not have been voluntary, because a defendant must be apprised of the nature of the charge to which he is pleading guilty. Id. Here, counsel's alleged ineffectiveness did not touch upon Petitioner being informed of the nature of the charges or any of the other "core principles."

24

at 870. Furthermore, because Petitioner is not entitled to amend his § 2255 motion to bring any of his proposed new claims, and because the claims in his original § 2255 motion are barred by the collateral attack waiver, the instant § 2255 motion should be **DENIED** without an evidentiary hearing.

## III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's motion to amend be **DENIED**, that his § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 28th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE